*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re MARSHALL, Minors.

UNPUBLISHED
June 27, 2024

No. 367017
Wayne Circuit Court
Family Division
LC No. 2023-000020-NA

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor children, KCM and TLM, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical or sexual abuse to the child or a sibling of the child) and (j) (reasonable likelihood that children will be harmed if returned to parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case stems from allegations that respondent sexually and physically abused DJM, who is respondent's daughter and the half-sibling of KCM and TLM. Respondent is the father of all three children. KCM and TLM have the same mother, and DJM has a different mother. This matter only involves respondent's parental rights to KCM and TLM; there was a separate petition involving DJM, and that case is not presently before us. Neither mother was named as a respondent in the present case.

The Department of Health and Human Services (DHHS) submitted a petition seeking termination of respondent's parental rights to KCM and TLM based on the allegations of sexual and physical abuse committed by respondent against DJM. According to the petition, 17-year-old DJM had reported that respondent had been molesting her since she was 8 years old. DJM further reported that respondent had intercourse with her, choked her with her hair, and had threatened to kill her if she did not have an abortion. Additionally, DJM described incidents from approximately 2 years earlier where respondent touched her vagina and breasts. Following a preliminary hearing, the petition was authorized. KCM and TLM remained in the sole care and custody of their mother, and father was granted supervised parenting time with KCM and TLM.

-1-

A bench trial was held, at which the trial court heard testimony and addressed the issues of adjudication and statutory grounds for terminating respondent's parental rights. DJM testified that when she was 11 or 12 years old, respondent choked her on multiple occasions, pushed her into the door, and threw her onto the bed. She further testified that in 2020, when she was 14 years old, she was asleep at respondent's house when she felt respondent rubbing her vagina over her clothing. A few days later, in respondent's bedroom, respondent touched DJM's vagina underneath her clothing with his hand and penetrated her vagina with his hand and his penis.

Additionally, DJM testified that she stayed at respondent's house for two weeks at some point in early 2022 while she was pregnant. According to DJM, respondent told DJM that if she chose to have the baby, he would lock her in the basement and kill her baby. Respondent also threatened to kill DJM and choked her with her own hair. DJM testified that she gave birth to the child and that her boyfriend is the father of the child. At the time of the hearing, DJM was living with her boyfriend at his mother's house.

Kalyn Jackson from the DHHS was the supervisor on the case. She testified at the hearing that neither TLM nor KCM had disclosed any inappropriate contact with respondent, but Jackson believed both girls were still at a risk of harm if left in respondent's care based on the disclosures made by DJM. Jackson believed that based on the sexual abuse of DJM, there was a threat of potential future sexual abuse by respondent against TLM and KCM. At the time of the hearing, TLM was 11 years old and KCM was 10 years old. Jackson testified that respondent had denied the allegations against him.

Following the hearing, the trial court found that TLM and KCM came within the court's jurisdiction under MCL 712A.2(b)(1) and (2), based upon respondent's physical, emotional, and sexual abuse of DJM and the threatened harm to the TLM and KCM. The trial court also found that petitioner presented clear and convincing evidence to support termination of respondent's parental rights to KCM and TLM under MCL 712A.19b(3)(b)(*i*) and (j). The trial court found that DJM's testimony was "credible and believable that she was sexually abused by her father on more than one occasion." The court ordered a clinical evaluation involving respondent and the children for purposes of the best-interest hearing to be held on a later date.

Subsequently, a best-interests hearing was held. Children's Protective Services (CPS) Ongoing Specialist Melanie Carter testified that she had been assigned since shortly before the petition was filed. She believed that termination of respondent's parental rights to KCM and TLM was in the best interest of each child because of the abuse respondent had committed against their half-sibling and the associated potential risk of harm to KCM and TLM. Carter testified that termination was in the children's best interest even though they were currently placed with their nonrespondent mother because merely entering an order granting sole custody to their mother would not prevent respondent from pursuing custody and visitation regarding the children at a later date. Carter indicated that termination of respondent's parental rights was the only means of ensuring the safety of the children. Carter acknowledged that there was a bond

between respondent and the two children[1] and that they wanted visits with respondent. The clinical report indicated that KCM and TLM were having behavioral issues since the restrictions on their contact with respondent had been imposed in this case and that the mother of KCM and TLM did not have any concerns about respondent. The report also noted concerns about respondent's parenting abilities and judgment based on his interview and records in the file. Specifically, the report noted that respondent had threatened to kill DJM and her unborn child, had expressed a desire to isolate himself and his children on an island with no other people, and had sexually abused his daughter.

The trial court found that petitioner established by a preponderance of the evidence that termination of respondent's parental rights to KCM and TLM was in each child's best interest. The trial court articulated the factors it considered in making its determination including, among other things, (1) respondent's sexual abuse of DJM, (2) respondent's limited parenting ability, (3) respondent's poor insight and judgment, (4) respondent's inability to provide the children with a safe, stable, and permanent home, (5) the risk of future harm to KCM and TLM, and (6) that a parent's treatment of one child is indicative of how the parent will treat other children. The court found that the "risk of harm to these children . . . greatly, greatly outweighs the bond" and that a custody arrangement or guardianship would not sufficiently protect the children. The trial court thereafter entered an order terminating respondent's parental rights. Respondent now appeals.

## II. STATUTORY GROUNDS

On appeal, respondent first challenges the trial court's finding that there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*) and (j).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews for clear error a trial court's finding that there are statutory grounds for termination of a respondent's parental rights. *Id*. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "When reviewing the trial court's findings of fact, this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(b)(*i*) if the court finds by clear and convincing evidence that the "child or a sibling of the child has

---

[1] Because respondent's parental rights to DJM are not at issue in this appeal, we will focus on the best-interest testimony and trial court findings regarding KCM and TLM.

suffered physical injury or physical or sexual abuse," the "parent's act caused the physical injury or physical or sexual abuse," and "the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*i*).

The trial court did not clearly err when it found that petitioner presented clear and convincing evidence that respondent sexually and physically abused DJM. DJM testified that respondent physically assaulted her on numerous occasions beginning when she was 11 or 12 years old, including throwing her on the bed and choking her. She also testified that respondent sexually assaulted her twice in 2020 when she was 14 years old and described the details of those two assaults. DJM testified that respondent choked her and threatened to kill her and her unborn child after she became pregnant and refused to get an abortion. Though respondent argues that DJM's testimony was inconsistent and not credible, the trial court found her testimony to be credible and "[i]t is not for this Court to displace the trial court's credibility determination." *In re HRC*, 286 Mich App 444, 460; 781 NW2d 105 (2009). Based on our review of the record, we are not left with a definite and firm conviction that the trial court made a mistake in finding that respondent sexually abused a sibling of KCM and TLM. This finding was thus not clearly erroneous.

Furthermore, there was clear and convincing evidence that there is a reasonable likelihood that KCM and TLM would suffer from abuse in the foreseeable future if placed with respondent. DJM testified about physical and sexual abuse that occurred on numerous occasions over a period of years, beginning when DJM was approximately the age that KCM and TLM were by the time of the bench trial. This Court has repeatedly recognized that "how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Accord *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014). Under the circumstances of this case, which we have already described, respondent's abuse of DJM is highly probative of how he may treat KCM and TLM. Moreover, this Court has also observed that "MCL 712A.19b(3)(b)(*i*) specifically states that it applies to a child on the basis of the parent's conduct toward the child's siblings." *In re HRC*, 286 Mich App at 461. Thus, the trial court did not clearly err by finding that petitioner presented clear and convincing evidence that there is a reasonable likelihood that KCM and TLM would suffer from abuse in the foreseeable future if placed with respondent.

Only one statutory ground is required to support termination of parental rights under MCL 712A.19b(3), and it is thus unnecessary to consider further statutory grounds here since termination was supported by MCL 712A.19b(3)(b)(*i*). *In re HRC*, 286 Mich App at 461. However, we additionally note that the same evidence previously discussed also supports a conclusion that the trial court did not clearly err by further relying on MCL 712A.19b(3)(j), which provides that termination is proper if "[t]here is a reasonable likelihood, based on the

conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."[2]

## III. BEST INTERESTS

Respondent next argues that the trial court clearly erred by finding that termination of his parental rights was in the best interests of KCM and TLM.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court reviews for clear error "a trial court's decision that termination is in a child's best interests." *In re Jackisch/Stamm-Jackisch*, 340 Mich App at 333. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

"With respect to a child's best interests, we focus on the child rather than the parent." *In re Mota*, 334 Mich App at 321. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to [the] parents' home within the foreseeable future, if at all." *In re Mota*, 334 Mich App at 321 (quotation marks and citation omitted). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Respondent appears to argue on appeal that the trial court erred by finding that termination was in the children's best interests because the children had a strong bond with respondent and the children were placed with their mother, which weighed against termination.

In determining the children's best interests, the trial court considered (1) the bond between the children and respondent, (2) respondent's parenting ability, (3) whether respondent could provide a safe, stable, and permanent home, (3) whether means less restrictive than termination could sufficiently protect KCM and TLM, (4) the ages and opinions of the children, and (5) the risk of future harm to KCM and TLM in light of respondent's sexual abuse of their sibling.

---

[2] We recognize that MCL 712A.19b(3)(j) has recently been amended, but the change involves a minor stylistic revision only. See 2023 PA 295; 2018 PA 58. We have quoted the current version of the statutory language.

In support of its determination that termination was in the children's best interests, the trial court noted that the children were bonded with respondent but found that the risk of harm to the children "greatly outweighs" their bond with respondent. This finding was supported by DJM's testimony, that respondent physically and sexually abused her on numerous occasions over a period of years. The trial court's finding that respondent's parenting ability is "severely limited" was supported by a clinical best-interests evaluation report indicating concerns about respondent's parenting abilities and judgment. This finding was also supported by evidence that respondent threatened to harm DJM and her child if she did not have an abortion, as well as the evidence that respondent physically and sexually abused his child. Considering all of the record evidence, there was abundant support for the trial court's finding that respondent could not provide a safe, stable, and permanent home for KCM and TLM. Finally, the trial court's findings that neither a custody arrangement nor guardianship would sufficiently protect the children and that termination was the best means for adequately protecting the children from the continuing threat of harm from abuse, were supported by the evidence that the mother of KCM and TLM did not have any concerns about respondent despite his abuse of his own child.

Additionally, to the extent respondent seemingly argues that the trial court was somehow required by principles of due process to consider imposing a custody arrangement granting custody to the children's mother before terminating respondent's parental rights, the record reveals and it should have been clear to counsel that the trial court actually did consider and reject such an arrangement. Defendant does not address this factual finding by the trial court or explain how it constitutes reversible clear error. Thus, this argument is abandoned. "Respondent has failed to coherently present and discuss any perceived error," and a "party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [his] claims, or unravel and elaborate for [him his] argument, and then search for authority either to sustain or reject [his] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted).

Respondent next complains that he was not offered services. Such an argument is devoid of legal merit because the original petition sought termination of respondent's parental rights at the initial disposition and long-standing case law holds that the DHHS "is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App at 463.

On this record, we are not left with a definite and firm conviction that the trial court made a mistake in finding that termination was in the best interests of the children. Respondent has not demonstrated that the trial court's decision was clearly erroneous.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young